## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLA A. DUNSTER, | : Civil No. 1:24-CV-469 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| LELAND DUDEK, Acting | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I.  Introduction

Kyla Dunster filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income on February 22, 2021. (Tr. 14).  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Dunster was not disabled from her alleged onset date of disability of December 14, 2019, through May 3, 2023, the date of the ALJ's decision. (*Id.*).

---

[1] Leland Dudek became the acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Michelle King is substituted as the defendant in this suit.

Dunster now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. (Doc. 12).  After a review of the record, we conclude that substantial evidence did not support the ALJ's findings in this case.  Therefore, we will remand this matter for further consideration by the Commissioner.

## II.   Statement of Facts and of the Case

On February 22, 2021, Dunster applied for disability insurance benefits and supplemental security income, citing an array of physical and mental impairments, including asthma, effects of a 2020 back surgery, post-traumatic stress disorder ("PTSD"), depression, anxiety, a 2020 suicide attempt, ocular migraines that cause double or triple vision, effects from a pituitary adenoma removed in 2011, and trouble bending over.  (Tr. 264).[2]  Dunster was 39 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as an office clerk.  (Tr. 31).

---

[2] At the outset, we note that because the only issues presented on appeal relate to Dunster's mental health impairments, our summary of the record and the case focuses exclusively on those impairments.

2

With respect to these alleged impairments the record revealed the following: Dunster was diagnosed with anxiety and unspecified depression as early as December 5, 2017, prior to her alleged onset date of disability. (Tr. 356). On December 20, 2018, Dunster was evaluated by Dr. Tammy Heskeyahu, Psy.D. (Tr. 538). Dr. Heskeyahu noted Dunster's anxious mood, adequate concentration, and fair fund of knowledge. (Tr. 541). She diagnosed Dunster with major depressive disorder, single episode, mild. (Tr. 542). Dr. Heskeyahu saw Dunster on February 7 and March 18 of 2019, noting euthymic mood and appropriate affect at both appointments. (Tr. 512, 521).

Between March 18, 2019, and May 18, 2021, there are no records of Dunster seeking or receiving mental health specific treatment. Notes from Dunster's primary care provider, Dr. Traceyan Mendez, mostly show normal mental health findings during this period. (Tr. 397, 445). One exception was on January 16, 2020, Dr. Mendez noted Dunster was positive for depression. (Tr. 461). On May 6, 2020, Dunster complained of irritability and that her prescription of Celexa was no longer helping with anxiety and depression as it once had. (Tr. 440-46). She was

prescribed Effexor and Atarax. (*Id.*). Records show that Dunster visited several providers in 2021 and 2022 for physical health issues, and the minimal mental health findings generated by those visits showed normal and stable diagnoses. (Tr. 431-32, 966, 975, 977, 1002, 1004, 1008, 1530, 1534, 1536, 1549, 1563).

On May 18, 2021, at the request of the state agency, Dunster underwent a consultative mental status evaluation by Dr. Amanda White, Psy.D. (Tr. 844-57). Dunster reported her memory was "hit or miss" and had gotten worse since the removal of a pituitary adenoma. (Tr. 846). Dunster further stated that she had difficulty concentrating and would often "zone out." (*Id.*). Dr. White found Dunster's attention and coordination were impaired, that she was unable to do serial 7's, and that her memory was mildly impaired. (Tr. 846-7). She diagnosed Dunster with major depressive disorder with moderate anxious distress and gave her a "guarded" prognosis, given a lack of treatment. (Tr. 847-48).

On June 2, 2021, Dunster underwent a mental health assessment with state agency consultant Lisa Marie Cannon, Psy.D. (Tr. 93). Dr.

4

Cannon opined that Dunster had moderate limitations in her ability to maintain attention and concentration for normal periods, and her ability to complete a workday without interruptions at a consistent pace without unreasonable rest periods. (Tr. 100-01). She also opined that Dunster would be capable of understanding, retaining, and following one and two step instructions. (Tr. 93).

On September 10, 2021, Dunster had a state agency mental health assessment with Dr. Anthony Galdieri. (Tr. 117). Dr. Galdieri found the same relevant limitations as Dr. Cannon: that Dunster would be moderately limited in her ability to maintain attention and concentration for extended periods, and in her ability to complete a normal workday or workweek without interruptions at a consistent pace without unreasonable rest periods. (Tr. 126). Dr. Galdieri likewise noted that Dunster was able to "understand, retain, and follow simple instructions (i.e., perform/follow one and two step tasks/instructions.)" (Tr. 127).

Finally, on November 12, 2021, Dunster had a reassessment of her mental health by Dr. Timothy Ostrich, Psy.D. (Tr. 136). Dr. Ostrich found the same limitations as Drs. Cannon and Galdieri, with the

5

additional limitation that Dunster could carry out "very short and simple instructions." (Tr. 149, 155).

It is against this factual backdrop that the ALJ conducted a hearing in Dunster's case on April 6, 2023. (Tr. 39-62). Dunster and a vocational expert both testified at this hearing. Dunster described, *inter alia*, her day-to-day living, her alleged impairments, and the fallout from a 2022 spinal surgery. (Tr. 43-56). The vocational expert discussed the classification of Dunster's past work and answered hypothetical questions from the ALJ about what work someone with Dunster's alleged impairments might be capable of. (Tr. 56-62).

Following this hearing, the ALJ issued a decision on May 3, 2023, denying Dunster's application for benefits. (Tr. 14-33). In that decision, the ALJ first concluded that Dunster had not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Dunster suffered from the following medically determinable severe impairments: degenerative disc and joint disease of the lumbar spine – status post lumbar fusion, an anxiety disorder, and a major depressive

disorder. (*Id.*). The ALJ further concluded that while Dunster suffered from several other impairments, those impairments were nonsevere. (Tr. 19). At Step 3 the ALJ determined that Dunster's impairments did not meet or equal the severity of a listed impairment under the Commissioner's regulations. (Tr. 20).

Between Steps 3 and 4 the ALJ concluded that Dunster retained the following residual functional capacity to:

> "[P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant: could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; could sit for up to 6 hours and stand/walk for up to 2 hours in an 8-hour workday (a narrow range of light work, effectively treated as sedentary work); could occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds; could occasionally balance and stoop, but cannot kneel, crouch, or crawl; must avoid concentrated levels of temperature extremes, humidity, vibration, fumes, and hazards, defined as heights; is limited to performing unskilled work activity as defined in the Dictionary of Occupational Titles (DOT), which is limited to simple, routine, and repetitive tasks, that are low stress, and that are defined as requiring only occasional decision-making required and only occasional changes in the work setting"

(Tr. 24)

In reaching this RFC determination, the ALJ found that while Dunster's "medically determinable impairments could reasonably be

expected to cause [her] alleged symptoms[,]" that her statements about those symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 26). The ALJ pointed to, *inter alia*, Dunster's normal neurological results, her mental status examination findings, and her lack of outpatient therapy as evidence for this conclusion. (Tr. 26-27). The ALJ also found that Dunster's reported activities of daily living—including, *inter alia*, feeding her cats, addressing her personal care, getting her daughter to school, preparing sandwiches, watching television, helping her daughter with homework, driving short distances, shopping, dusting, and ironing—suggested that she could perform work within the parameters of the ALJ's RFC. (Tr. 27).

The ALJ also considered the medical opinions on record. She found the opinion of consultative examiner Dr. White to be largely persuasive. (Tr. 28). The ALJ found the other three medical opinions, those of Drs. Cannon, Gladieri, and Ostrich, to be somewhat persuasive. (*Id.*). The ALJ found that all four opinions suggested Dunster should be limited to simple routine tasks, and that this finding was supported by and

consistent with Dunster's daily activities of household chores, personal care needs, and helping her daughter with homework. (Tr. 28-29). The ALJ "discounted" the opinion of Dr. Ostrich as it related to his opinion of Dunster's moderate limitation in interacting with others because she felt that limitation was inconsistent with Dunster's testimony that she interacted with family, friends, and authority figures. (Tr. 29).

The ALJ also noted here that "[e]ach of the opinions indicated that the claimant was limited to 1 to 2 step tasks," yet none of the opining physicians "offered any signs or laboratory findings to support this type of significant limitation." (*Id.*). The ALJ then pointed to some of Dunster's alleged activities of daily living and found that "these activities require one to engage in multistep tasks and offers no support for a significant limitation to 1-2 step tasks." (*Id.*). On that basis, the ALJ found that all the medical opinions, as they related to "1-2 step tasks," were unpersuasive. (*Id.*).

At Step 4, the ALJ found that Dunster could not perform her past work but found at Step 5 that she could perform other jobs that existed in significant numbers in the national economy, such as production

inspector, order clerk, or product loader. (Tr. 31-32). Having reached these conclusions, the ALJ determined that Dunster had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Tr. 33).

This appeal followed. (Doc. 1). On appeal, Dunster challenges the adequacy of the ALJ's decision arguing it was not based on substantial evidence because, *inter alia*, of the absence in the RFC of a limitation constraining Dunster to one to two step tasks. (Doc. 12 at 12-16). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration by the commissioner in accordance with this decision.

## III.  Discussion

### A.   Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008);

*Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record

as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also*

12

*Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and

satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

14

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by

15

substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6,

11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15.

Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C.    This Case Will Be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).    After consideration, we conclude that the ALJ's RFC determination is not supported by substantial evidence.

Dunster argues that remand is required because the RFC fails to include a limitation to one-to-two-step tasks, as set forth by the medical opinions in the record.  We agree and find that the ALJ's decision is not supported by substantial evidence.

An ALJ makes the ultimate determinations when crafting an RFC. *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  An ALJ is not required to adopt the individual limitations opined in any

specific opinion. *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). An ALJ may even reject a limitation from an opinion they found persuasive, so long as they indicate which evidence led them to a distinct conclusion and ably demonstrate the underlying logic. *See e.g., Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir 1999). Courts in this circuit have found a basis to remand where an ALJ determines that a claimant is less limited than all medical providers have opined. *See e.g., Hobart v. Kijakazi*, 2023 WL 2142965, at *5 (M.D. Pa. Feb. 21, 2023) ("In the Third Circuit, an RFC assessment is not supported by substantial evidence where an ALJ finds a lesser degree of limitation— meaning a greater degree of ability—than found by any medical professional without other evidence that supports the ALJ's RFC determination."); *see also Decker v. Berryhill*, 2018 WL 4189662, at *6 (M.D. Pa. June 8, 2018) (collecting cases).

As we have explained, the ALJ omitted a one-to-two-step-tasks limitation from the RFC despite finding that every medical opinion contained such a limitation. (Tr. 29). The ALJ disagreed with the limitation because "none of the Doctors offered any signs or laboratory

findings to support this type of significant limitation." (Tr. 27).  The ALJ also relied on her own observations that "[Dunster] testified that she is capable of performing a wide variety of activities[,]" and that "[Dunster] can perform activities of daily living . . . [which] require [her] to engage in multistep tasks and offers no support for a significant limitation to 1-2 step tasks." (*Id.*).

In our view, these statements amount to the ALJ improperly substituting her own lay interpretation of both medical and non-medical evidence for the opinions of the medical providers. *See Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (finding error in an ALJ independently reviewing and interpreting medical evidence to discredit a medical opinion).  Importantly, the Third Circuit has reinforced that "[t]he principle that an ALJ should not substitute [their] lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000).  Here, these medical providers each set forth a similar limitation as to Dunster's mental health impairments, which the ALJ omitted based on her lay interpretation of the evidence.  Accordingly, we find that the

ALJ's decision regarding the omission of a one-to-two-step-task limitation is not supported by substantial evidence and requires a remand.

The Commissioner's argument that Dr. White's opinion did not contain the one-to-two-step-task limitation is unavailing for two reasons. First, the ALJ found that all of the medical opinions contained a similar limitation and discounted that limitation in favor of her own lay interpretation of the medical evidence. Second, if the ALJ omitted this limitation based on Dr. White's opinion not containing such a limitation, there is no explanation in the ALJ's decision to that effect. As we have explained, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck*, 181 F.3d at 433. Here, there is no indication that the ALJ failed to adopt this limitation based on the persuasiveness she afforded to Dr. White's opinion. Thus, we cannot conclude based on the Commissioner's post-hoc rationalization—that Dr. White's opinion

21

supported the ALJ's RFC determination—that the ALJ's decision is based on substantial evidence. *See Clinkscales o/b/o T.S. v. Colvin*, 232 F. Supp. 3d 725, 736 (E.D. Pa. 2017) ("[T]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision; the Commissioner may not offer a post-hoc rationalization.") (citations and internal quotation marks omitted).

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.[3]

---

[3] Because we find that this error necessitates remand, we do not reach consideration of the claimant's other allegations of error.

## IV.  Conclusion

For the foregoing reasons, the decision of the Commissioner will be

remanded for further consideration.

An appropriate order follows.

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: February 26, 2025